******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

PALMER, J., concurring. In *State* v. *Kitchens*, 299 Conn. 447, 10 A.3d 942 (2011), this court held that a defense counsel's failure to object to the trial court's jury instructions after having been afforded a meaningful opportunity to review them gives rise to a conclusive inference that, for strategic reasons, defense counsel knowingly and intentionally waived the defendant's right to challenge the instructions on constitutional grounds.[1] See id., 474, 482–83. As the Appellate Court correctly determined, the present case, which involves a claim by the defendant, Raquann Tyrone Davis, that the trial court improperly had instructed the jury that it could find him guilty of robbery in the first degree on an uncharged theory of liability,[2] falls squarely within the *Kitchens* waiver doctrine. See *State* v. *Davis*, 131 Conn. App. 50, 62–65, 26 A.3d 128 (2011). Straining to avoid the obvious unfairness of faithfully applying *Kitchens* to the present case—because, as the majority aptly notes, "the defendant gained no [strategic] advantage by permitting the state to enlarge upon the theory of liability alleged in its long form information"—the majority relies on demonstrably illogical and unconvincing arguments in refusing to acknowledge that *Kitchens* plainly precludes the defendant's claim of instructional impropriety. If the majority now has second thoughts about this court's holding in *Kitchens*—as it should, for the reasons set forth in part II of this opinion—then the majority should say so. If not, the majority should acknowledge that applying our holding in *Kitchens* to the facts of the present case leads to one, and only one, conclusion: for purposes of *Kitchens*, defense counsel had adequate written notice of the jury instruction at issue and, therefore, must be presumed to have waived the defendant's right to object to that instruction. Consequently, despite my strong disagreement with *Kitchens*,[3] I ordinarily would feel bound to follow its holding and to affirm the judgment of the Appellate Court in the present case.[4] I do not do so, however, because the majority does not consider itself so bound, and because I continue to believe that our decision in *Kitchens* was manifestly incorrect. Thus, this concurrence consists of two parts: first, I explain why *Kitchens* clearly controls this case, and, second, I briefly elaborate on why, although *Kitchens* is controlling, I nevertheless decline to follow it in the present case.

I

The relevant facts are simple and straightforward. After the state rested its case against the defendant, the trial court informed defense counsel that it had received the state's written request to charge on robbery in the first degree, which, as the court also noted, is

the standard form jury instruction that appears on the Judicial Branch website. With respect to that instruction, the court stated: "I intend to give the robbery [charge] in essence, maybe not exactly, but the robbery charge will be given." Defense counsel responded that he did not have the state's request to charge with him, and that he had not yet read it, but that, because it was the standard charge, he had no objection to it. The next day, the court instructed the jury on the elements of robbery in the exact terms of the standard form jury instruction, as reproduced verbatim in the state's request to charge, that had been the subject of the colloquy between the court and defense counsel the previous day. Following a recess, both counsel once again informed the court that they had no objection to the instruction as given.

In *Kitchens*, this court held that, "when the trial court provides counsel with a copy of the proposed jury instructions, allows a meaningful opportunity for their review, solicits comments from counsel regarding changes or modifications and counsel affirmatively accepts the instructions proposed or given, the defendant may be deemed to have knowledge of any potential flaws therein and to have waived implicitly the constitutional right to challenge the instructions on direct appeal." *State* v. *Kitchens*, supra, 299 Conn. 482–83. In other words, in such circumstances, defense counsel will be found to have waived any and all potential claims of instructional impropriety that he did not raise. The court in *Kitchens* also stated that the waiver "determination by the reviewing court must be based on a close examination of the record and the particular facts and circumstances of each case." Id., 483. Finally, for purposes of this determination, it is presumed that "counsel is competent and capable of acting on behalf of the defendant in matters concerning trial management, including waiver of the defendant's right to challenge a jury instruction . . . ." Id., 486–88.

In the present case, it is *undisputed* that (1) defense counsel had a written copy of the charge on robbery in the first degree that the court told counsel it intended to give, "in essence," to the jury,[5] (2) counsel had ample time and opportunity to consider that charge before the court instructed the jury, (3) counsel expressly stated that he did not object to the charge as given, and (4) the charge was identical to the standard charge contained in the state's requested instruction and on the Judicial Branch website. Under these facts, it could hardly be clearer that the *Kitchens* requirement—a meaningful opportunity to review the court's proposed charge—was met.

In a paradigmatic example of the exaltation of form over substance, the majority reaches a different conclusion, focusing, first, on the fact that the trial court informed counsel that it would charge the jury, "in

essence, maybe not exactly," in accordance with the standard jury charge on first degree robbery contained in the state's requested instruction. On the basis of this language, the majority asserts that the court's statement concerning the charge was so "ambiguous" and "equivocal" that it "failed to provide the [defense] with adequate notice of the actual content of the court's proposed instructions." Text accompanying footnote 7 of the majority opinion. According to the majority, the purported ambiguity and resulting lack of notice stemmed from the court's failure to inform counsel "of the [precise] substance of the proposed instructions," which, the majority asserts, deprived counsel of a "meaningful opportunity to review the instructions."

It is an understatement to say that the majority's reasoning is unpersuasive. There is absolutely nothing "ambiguous" or "equivocal" about the court's statement that it would give the state's proposed charge "in essence, maybe not exactly . . . ." In fact, the statement was perfectly clear: the court intended to give the proposed charge, but it retained the option of making immaterial or inconsequential changes to that charge. I do not see how the court's statement can possibly be interpreted differently, and I also do not see how it is possible to conclude that competent defense counsel did not have adequate notice of the proposed charge merely because the court indicated that it might make immaterial changes to it. Indeed, when a court provides the parties with a copy of its proposed charge, it goes without saying that the court retains the option of deviating from the script in a way that has no material bearing on the meaning or substance of the charge. Of course, if, in the present case, the charge that the court ultimately gave to the jury *did* deviate materially from the proposed charge, then, under *Kitchens*, defense counsel would not be deemed to have had adequate notice of that charge. That did not happen in the present case; rather, the language of the charge as given was *identical* to the language of the proposed charge.

With respect to its assertion that defense counsel in the present case somehow did not have a meaningful opportunity to review the charge, there is only one way for the majority to reach that result, that is, by concluding that competent counsel would not be obliged either to retrieve the state's proposed charge from his file or to obtain the standard form charge on the Judicial Branch website, and then to review the charge. This is so because it is undisputed that, for purposes of *Kitchens*, defense counsel had sufficient time to review a written copy of the charge, and, thus, ordinarily, *Kitchens* requires us to presume that counsel did review the charge, that he did recognize every possible constitutional infirmity with it, and that, by not objecting to the charge, he did knowingly and intentionally waive every such infirmity. Thus, only if counsel in the present case was *not required to review* the

charge, despite having been afforded a fair opportunity to do so, can he be deemed not to be on notice of it. In fact, that necessarily is the premise of the majority's argument: because the court's statement that it would give the proposed or standard charge "in essence, maybe not exactly" was so "ambiguous" and "equivocal," defense counsel was under no obligation to review the charge. Not surprisingly, one scours the majority opinion in vain to find its acknowledgment of this premise, no doubt because it is so completely unfounded. Obviously, no competent attorney in defense counsel's position would—or should—feel free to conduct himself in the cavalier and unprofessional manner envisioned by the majority—that is, to simply ignore the charge that he had in his possession and that he readily could have obtained online—merely because the trial court stated that it would be giving the proposed or standard charge "in essence," although perhaps not word for word. And yet, that is the majority's specific conclusion: a defense attorney reasonably cannot be expected to review the proposed charge unless the court promises to give it word for word and not to deviate from it, even in the most immaterial or inconsequential way. There simply is no rational justification for this conclusion, and the majority makes no attempt to offer one.[6]

Rather, as the Appellate Court succinctly explained, "the fact that the [trial] court, in discussing the state's requested robbery instruction, stated that it might not use the state's exact language is of no consequence to our analysis. Plainly, the court stated that it intended to deliver 'in essence' the state's requested robbery instruction. Afforded its reasonable interpretation, this statement conveyed that the court intended to deliver an instruction that mirrored the state's instruction in all material respects. . . . [T]his, in fact, occurred." *State* v. *Davis*, supra, 131 Conn. App. 60.

Instead of acknowledging the obvious logic of the Appellate Court's reasoning, the majority ignores it altogether and asserts, instead, that, "[i]f anything is indisputable . . . it is that when the trial court stated that the instruction it intended to give on robbery in the first degree would be 'in essence, maybe not exactly,' the model instruction available on the Judicial Branch website and reproduced by the state in its proposed charge, the court indicated that it would give a charge that did not mirror the model instruction in every respect. Accordingly, the precise substance of the intended charge could not have been clear to defense counsel when he agreed to it." (Emphasis omitted.) Footnote 10 of the majority opinion. This argument is specious, first, because it is predicated on an incorrect premise and, second, because it is beside the point. The premise on which this argument is founded, that is, that the court "indicated that it would give a charge that did not mirror the [proposed or] model instruction in

every respect"; (emphasis omitted) id.; is simply incorrect because the statement surely was *not* a representation that the court would give a charge that did not mirror the model charge exactly; rather, it was a representation that the court "maybe" or *perhaps* would not give the proposed or standard charge "exactly . . . ." In stating that it might not give the charge "exactly," the court also expressly retained the option of giving it "exactly," which is *precisely* what the trial court did do.

Other flaws in the majority's argument are even more glaring and more fundamental. First, even if it is assumed that "the precise substance of the intended charge could not have been clear to defense counsel when he agreed to it," as the majority asserts; footnote 10 of the majority opinion; the question is not what counsel believed or did not believe *when he agreed to the charge* but what he would have known about the charge *if he had read it* before the court instructed the jury the next day. If he had, the charge would have been perfectly clear to him. That is what we stated in *Kitchens*: counsel must be given an adequate opportunity to review the proposed charge, and, if the court affords counsel that opportunity, a reviewing court will deem counsel to have reviewed it and to have waived any challenge to the charge that counsel did not raise in the trial court.[7] See *State* v. *Kitchens*, supra, 299 Conn. 482–83. As I explained, the majority's position necessarily is founded on its threshold or predicate determination that the trial court's statement with respect to its plan to give the state's proposed charge was so vague and so nebulous as to the content of the charge that a competent defense attorney reasonably would feel free to decline to read the proposed charge because the court's statement provided no meaningful guidance. For the reasons set forth previously, this is a wholly unreasonable and illegitimate proposition.

Second, to the extent that it can be said that counsel was unaware of "the *precise* substance of the intended charge"; (emphasis added) footnote 10 of the majority opinion; the obvious response to the majority's assertion is, so what? Why does the "precise" substance or language of the proposed charge matter if, as the court stated here, it intends to give that charge in all material respects? Of course, it does not matter at all, because an immaterial or inconsequential difference is, by definition, a difference that does not matter. If counsel had reviewed the proposed charge, as he was required to do, he would have known what it said, and he would have known that the charge as given did not deviate *at all* from the proposed charge. In those circumstances, there simply is no possible justification for concluding that defense counsel had inadequate notice of the intended charge for purposes of *Kitchens*.[8]

The majority advances a second reason for finding that *Kitchens* is inapplicable to the present case,

namely, that the trial court itself never provided a copy of *its* proposed charge to defense counsel. This contention fares no better than the majority's first argument. Although acknowledging that defense counsel had a copy of the state's request to charge on robbery, which mirrored the standard form jury charge from the Judicial Branch website, and that the state's requested charge was identical in all material respects to the charge that the court told counsel it would give to the jury, the majority asserts that only instructions that the court personally provides to counsel will suffice because, under *Kitchens*, "the trial court's proposed instructions, not the [state's] request to charge, is the touchstone of our implied waiver analysis." Although the majority's assertion is correct as a general matter, the majority conveniently overlooks the "particular facts and circumstances of [the] case," which, pursuant to *Kitchens*, and common sense, we must consider. *State* v. *Kitchens*, supra, 299 Conn. 483. Viewed in the context of those facts and circumstances, it is perfectly obvious that it makes no difference whether the charge proposed by the court is memorialized in a document that the court itself provides to the parties or whether the court tells counsel that its proposed instruction is the very same instruction that is set forth in the state's written request to charge, a copy of which defense counsel had been provided in a timely manner. In other words, there was no need for the court to give counsel a copy of a document that he already had. Thus, in the present case, the distinction that the majority draws between a written copy of the proposed charge that is provided to counsel by the court, on the one hand, and a copy of the charge contained in the state's written request to charge, on the other, is a classic example of a distinction without a difference.[9]

It is apparent, therefore, that the two arguments proffered by the majority to support its reversal of the judgment of the Appellate Court are mere makeweights and that, as the Appellate Court concluded, *Kitchens* bars the defendant's claim of instructional impropriety. Nevertheless, like the majority, I would not preclude the defendant from pursuing his claim on appeal. In contrast to the majority, however, I decline to so preclude the defendant because, in my view, *Kitchens* represents a radical, unwarranted and unjust departure from the *Golding* doctrine.[10]

## II

As I previously discussed, *Kitchens* is founded on the premise, advanced by the state in that case, that defense counsel's failure to object to the trial court's jury charge, after having been afforded a reasonable opportunity to review it, gives rise to an inference that counsel waived all constitutional challenges to the charge.[11] See id., 483 ("[i]t is well established that implied waiver . . . arises from an *inference* that the

defendant knowingly and voluntarily relinquished the right in question" [emphasis in original]). In other words, if two conditions are met, namely, that counsel had a meaningful opportunity to review the charge and did not object, a blanket waiver will be implied. Of course, waiver is to be distinguished from forfeiture. As the court explained in *Kitchens*, "waiver is the intentional relinquishment or abandonment of a known right, whereas forfeiture is the failure to make the timely assertion of that right"; (internal quotation marks omitted) id., 474; and it bears emphasis that this court expressly *rejected* the state's alternative argument in *Kitchens* that counsel's acquiescence in or acceptance of the charge "represents a *forfeiture* that precludes *Golding* review." (Emphasis added.) Id., 474. In declining the state's invitation in *Kitchens* to subject to forfeiture any potential constitutional claim merely because it was not asserted in a timely manner, the court explained that subjecting a constitutional right to forfeiture for that reason would be inconsistent with *Golding*. See id., 474–75. I fully agree with this conclusion because *Golding* embodies the sound judicial policy that, in the absence of a knowing and intentional waiver, a criminal defendant is entitled to the opportunity to prevail on an unpreserved constitutional claim that meets the four *Golding* criteria. See footnote 10 of this opinion. Thus, the court in *Kitchens* correctly explained that, under *Golding* and its progeny, defense counsel will not be deemed to have abandoned the defendant's right to appellate review of an unpreserved constitutional challenge to the court's jury charge merely because counsel failed to object to the allegedly improper instruction in the trial court; rather, the claim will be treated as waived for purposes of *Golding* if, and only if, the record reflects that counsel's failure to raise the claim in the trial court was the product of an intentional, strategic decision, made with full knowledge of the claim, to abandon the claim. See *State* v. *Kitchens*, supra, 299 Conn. 474–75. *Kitchens* is otherwise fundamentally flawed, however, because, as I explain hereinafter, it is predicated on the demonstrably unsupportable presumption that counsel's failure to object to the jury charge after fair notice of the charge signifies a knowing and intentional waiver of any constitutional claim that counsel did not raise in the trial court. Indeed, in relying on this groundless presumption, the court in *Kitchens* effectively adopted the very same forfeiture model that it purported to reject as incompatible with *Golding*.

In accordance with *Kitchens*, defense counsel is deemed to have waived *any* and *all* constitutional claims that he did not raise at trial. See id., 483. This blanket waiver includes the entire universe of meritorious *and* nonmeritorious claims, because *Kitchens* treats them *all* as having been waived. Consequently, because waiver is the *intentional* relinquishment or abandonment of a *known* right; id., 469; *Kitchens*

requires us to presume, first, that counsel thought of every possible claim, from the most meritorious to the most frivolous, and everything in between, and, second, that, upon due consideration of each and every one of those claims, counsel decided to abandon them all, presumably for strategic reasons. Because it is obviously impossible for any defense attorney, or any team of defense attorneys, to conceive of all potential claims, whether meritorious or not, it is clear that *Kitchens* is predicated on a palpably unrealistic assumption. For that reason alone, the *Kitchens* waiver doctrine should be deemed invalid.

Even if the *Kitchens* test were based on a plausible reality, which it is not, its approach is completely at odds with the manner in which competent criminal defense counsel actually conduct themselves in representing their clients. Far from intentionally abandoning potentially meritorious constitutional claims, competent defense attorneys invariably raise any and all such claims of which they are aware because there simply is no legitimate justification for not doing so.[12] In light of *Kitchens*, however, whenever the trial court provides defense counsel with a reasonable opportunity to review a written copy of the charge prior to its delivery to the jury, reviewing courts now presume, conclusively and without the possibility of rebuttal, that defense counsel has considered and intentionally abandoned a virtually limitless number of possible constitutional challenges, including potentially meritorious ones, merely by failing to raise them. As I stated previously, even if this were humanly possible—and of course it is not—it is a presumption that bears absolutely no relation to the way in which competent defense counsel go about representing their clients. Thus, the court in *Kitchens* had it backward: instead of presuming that competent defense counsel does *not* intend to waive his client's constitutional rights unless the record clearly and unequivocally reflects such an intent, *Kitchens* presumes a knowing and intentional waiver from a record that is silent on the issue. Not surprisingly, this approach cannot be squared with the settled principle that, under the strict waiver standard applicable when, as in the present case, important rights are at stake, courts "indulge every reasonable presumption against waiver of fundamental constitutional rights and . . . [do] not presume acquiescence in the loss of [such] rights." (Internal quotation marks omitted.) *State* v. *Gore*, 288 Conn. 770, 777, 955 A.2d 1 (2008).

The court in *Kitchens* was obliged to acknowledge that determining whether a knowing and intentional waiver may be implied from the circumstances depends on a fact based, case specific inquiry. See, e.g., *State* v. *Woods*, 297 Conn. 569, 583, 4 A.3d 236 (2010) (determination of waiver of constitutional right requires consideration of totality of circumstances). In truth, however, *Kitchens* adopts a "one size fits all" methodology pursu-

ant to which only two factors merit consideration: whether the proposed charge was in writing and whether defense counsel was afforded a reasonable period of time to review the charge. Nothing else matters, and no other facts or circumstances are relevant to the inquiry. How can this be, if, as the court in *Kitchens* conceded, a finding of implied waiver can be made only after considering *all* the facts and circumstances? The explanation is that *Kitchens* is not a waiver case at all. It is, rather, a *forfeiture* case *masquerading* as a waiver case. Under *Kitchens*, the defendant's right to raise a claim of instructional impropriety on appeal is *forfeited* if it is not raised in a timely manner after adequate notice of the proposed charge. Although this was abundantly clear when *Kitchens* was decided; see *State* v. *Kitchens*, supra, 299 Conn. 544 n.10 (*Palmer, J.*, concurring) ("in reality, the majority's decision [in *Kitchens*] rests on the forfeiture doctrine, pursuant to which defense counsel's failure to make a claim in a timely manner, that is, at trial, bars the defendant from raising the claim on appeal"); see also id., 541 n.8 (*Palmer, J.*, concurring) ("the majority [in *Kitchens*] effectively embraces the forfeiture doctrine while purporting to reject it"); it also has been amply demonstrated by our post-*Kitchens* cases. See, e.g., *State* v. *Webster*, 308 Conn. 43, 63, 60 A.3d 259 (2013) ("[w]e note that in every post-*Kitchens* case in which defense counsel was given the opportunity to review [a written copy of] the [court's] proposed jury instructions overnight, we have concluded that defense counsel had received a meaningful opportunity to review the proposed instructions under the *Kitchens* test").

That *Kitchens* is not truly predicated on a waiver theory also is readily apparent from the refusal of the majority in that case to accept the fact that, as I explained in my concurring opinion in that case, the *inference* of a knowing and intentional waiver that was invented in *Kitchens* easily can be avoided by a simple representation by trial counsel, following his review of the court's proposed jury charge, that he does not intend to waive any potential constitutional claims, and that his failure to object indicates only that he is unaware of any such claim or claims. See *State* v. *Kitchens*, supra, 299 Conn. 541 (*Palmer, J.*, concurring) (explaining that counsel can readily circumvent inference of waiver created under *Kitchens* by express disavowal of any such waiver). Such an express representation by counsel—who, in accordance with *Kitchens*, is deemed to be acting competently and appropriately on behalf of the defendant—necessarily would trump any possible suggestion of an implied waiver by conduct. After all, under *Kitchens*, waiver is implied only because the court in that case concluded that counsel's conduct in failing to object to the court's charge after having been afforded a meaningful opportunity to review it gives rise to an inference that counsel *intended* to waive the defen-

dant's rights. If, however, defense counsel, who is presumed to be competent, expressly states that his failure to object should not be mistaken for waiver, because, in fact, he is *not* intending to waive *any* potential constitutional claim, then there is absolutely no reason why the reviewing court should nevertheless *insist* that counsel had intended to waive the defendant's rights.[13] Indeed, although purporting to acknowledge that the waiver determination can be made only upon a careful consideration of all the facts and circumstances, the court in *Kitchens* nevertheless concluded that defense counsel's express disavowal of waiver *has no bearing on the waiver issue.* Id., 488 n.25 ("we unequivocally reject as legally unsupportable the assertion that counsel may expressly disavow waiver by informing the trial court that he is 'unaware' of any constitutional infirmities in the jury instructions"). There simply is no logical justification for this conclusion because it is completely at odds with the concept of a knowing and intentional waiver; the conclusion makes sense only when one appreciates the *Kitchens* model for what it is, namely, a forfeiture model and not a waiver model.

The illogic of the court's reasoning in *Kitchens* is highlighted by its explanation that "implied waiver rests on the 'legal fiction' that, if counsel had sufficient notice of the jury instructions and was aware of their content, an *inference*, or 'assumption' of fact . . . can be made that counsel also was aware of any potential constitutional defect that the instructions may have contained and, with full understanding of that defect, opted to refrain from objecting for strategic reasons." (Citation omitted; emphasis in original.) Id., 487 n.25. It is entirely unreasonable to conclude that an inference based on an assumption resting on a legal fiction can somehow take precedence over an express, clarifying statement by competent counsel.

Yet another reason to reject the court's holding in *Kitchens* stems from the manner in which the court in that case would treat the alleged waiver of a claim of plain error. Under *Kitchens*, even the most inexplicable failure by counsel to object to a manifestly unconstitutional jury charge will be deemed to represent counsel's strategic waiver of the claim if counsel had been given a meaningful opportunity to review the charge. See, e.g., *State* v. *Webster*, supra, 308 Conn. 60–61 n.14 (*Kitchens* waiver doctrine applies to jury instruction that allegedly failed to set forth essential elements of crime charged); cf. *State* v. *Darryl W.*, 303 Conn. 353, 367 and n.15, 33 A.3d 239 (2012). Consistent with this approach, the court in *Kitchens* observed that, "in keeping with these principles . . . the finding of a valid waiver precludes a finding that a jury instruction constitutes plain error because a valid waiver means that there is no error to correct." *State* v. *Kitchens*, supra, 299 Conn. 474 n.18. As this court repeatedly has explained, plain error is error "of such monumental proportion that [it] threat-

en[s] to erode our system of justice and work a serious and manifest injustice on the aggrieved party"; (internal quotation marks omitted) *State* v. *Sanchez*, 308 Conn. 64, 76–77, 60 A.3d 271 (2013); and, consequently, it is reserved "for truly extraordinary situations [in which] the existence of the error is so obvious that it affects the fairness and integrity of and public confidence in the judicial proceedings." (Internal quotation marks omitted.) Id., 77. Under this court's pronouncement in *Kitchens*, however, even an impropriety in the jury charge that is so glaring and so harmful as to constitute plain error will be found to have been waived by implication if the *Kitchens* notice requirement has been met. In my view, it is patently unreasonable for a reviewing court to infer that defense counsel knowingly and intentionally waived the defendant's right to challenge an instruction that is so grossly and obviously deficient as to constitute plain error.[14]

### III

In sum, *Kitchens* forecloses claims of instructional impropriety under *Golding* for reasons that have nothing to do with waiver and everything to do with forfeiture. Indeed, it is perfectly clear that *Kitchens* is a rule of forfeiture. If the trial court follows certain procedures to the letter—the court provides counsel with an exact copy of the jury charge twenty-four hours in advance—counsel forfeits the defendant's right to object to the court's charge if counsel does not object in a timely manner. As the majority in *Kitchens* recognized, however, forfeiture is not a proper basis for precluding *Golding* review of such claims because *Golding* reflects the policy determination that, as a rule, a defendant's interest in obtaining review of an unpreserved constitutional claim outweighs the interest of the state and the court in enforcing procedural rules designed to ensure that claims are made in a timely manner. See *State* v. *Kitchens*, supra, 299 Conn. 474–75. Consequently, in *Kitchens*, the court could not achieve the result that it did without either overruling *Golding* as applied to claims of instructional impropriety or adopting a forfeiture model in violation of *Golding* and denominating it as a waiver model. The court chose the latter. Although application of that model to the present case leads inexorably to the conclusion that the defendant waived his right to challenge the jury instruction at issue, that conclusion is wrong because *Kitchens* is wrong.[15] Nevertheless, in the ordinary course, I would be constrained to follow *Kitchens* and to reach a contrary result, even though that result would be contrary to *Golding* and to the important principles on which *Golding* is founded. I see no reason to follow *Kitchens* in the present case, however, because even the majority cannot bring itself to do so.[16] I therefore concur in the result that the majority reaches.

[1] Under *Kitchens*, when the state establishes that this notice requirement has been met, a reviewing court *must* find an implied waiver if defense

counsel raises no objection to the charge at issue. See *State* v. *Kitchens*, supra, 299 Conn. 483–84. In other words, the inference is necessary and conclusive, rather than permissive.

[2] As the majority explains, "[t]he defendant . . . claims [on appeal] that the trial court improperly instructed the jury that it could find him guilty under a theory of liability not set forth in the state's information. Specifically, the defendant argues that although the state alleged, in count one of its long form information . . . that 'during the commission of the crime [the defendant] was armed with what he represented by his words or conduct to be a firearm,' in violation of General Statutes § 53a-134 (a) (4), the court instructed the jury that the defendant could be found guilty if all the other elements of robbery in the first degree had been proven, and *any person* participating in the commission of the crime possessed a firearm." (Emphasis in original.) Text accompanying footnote 1 of the majority opinion.

[3] See *State* v. *Kitchens*, supra, 299 Conn. 530–32 (*Palmer, J.*, concurring).

[4] Previously, I have supported the application of our holding in *Kitchens* when its waiver principle governed. E.g., *State* v. *Darryl W.*, 303 Conn. 353, 368, 33 A.3d 239 (2012); see also *State* v. *Thomas W.*, 301 Conn. 724, 738–39, 22 A.3d 1242 (2011) (*Palmer, J.*, dissenting) (disagreeing that *Kitchens* barred claim of instructional impropriety under facts of case but acknowledging "obligat[ion] to abide by this court's holding in *Kitchens*"). I have done so, however, not because I believe that *Kitchens* was correctly decided but, rather, in consideration of the principle of stare decisis.

[5] As the majority concedes, the defendant never has claimed that defense counsel did not have a copy of the state's requested jury instruction concerning robbery in the first degree.

[6] *Kitchens* aside, it bears noting that the majority, in concluding that defense counsel had no obligation to review the proposed charge because the court's statement was confusing or ambiguous, sets a very bad precedent with respect to what future courts may expect of counsel in such circumstances.

[7] For the reasons set forth in part II of this opinion, this presumption in *Kitchens* simply has no basis in law or fact. Because, however, the majority purports to apply the *Kitchens* waiver doctrine to the present case, the majority is obliged to apply the doctrine in accordance with *Kitchens*.

[8] The majority makes a final, related argument, stating: "Given the trial court's statement that it would give the model instruction, 'in essence, maybe not exactly,' it would not have been unreasonable for defense counsel to presume, when he agreed to the proposed charge, that it would not be the model instruction *verbatim*, but rather, would be a charge that largely was based on the model instruction, yet was tailored to the information in the present case so as to omit any portion that was inconsistent with that document. Contrary to the information, however, the court failed to omit the portion of the model instruction that permitted the jury to [find] the defendant [guilty] on the basis of the display of a firearm by another participant in the crime. At the very least, the court's explanation of the instruction it would deliver was ambiguous, and, therefore, defense counsel's assent to it does not warrant a finding of waiver." (Emphasis in original.) Footnote 10 of the majority opinion. This argument also has no merit. First, when defense counsel agreed to the proposed charge, he indicated that *he had not yet read the charge*, and, therefore, he did not know what it contained. Of course, if he *did* know the content of the proposed charge, that actual knowledge would satisfy the *Kitchens* notice requirement. Because counsel did not know the substance of the proposed charge, he could not possibly have harbored any belief as to how, if at all, if might subsequently be modified. This fact alone defeats the majority's contention.

The majority's argument fails for a second reason. When the court stated that the state's proposed charge would be given, "in essence, maybe not exactly," the court merely was informing counsel that, although it might not give the proposed charge word for word, the charge as given would mirror the proposed charge in all material respects. However, under the contrived scenario advanced by the majority—a scenario in which the majority presumes that counsel might have believed that the proposed charge, although constitutionally deficient, would somehow be transformed into a constitutionally proper charge when it is given, albeit without any input from counsel—the difference between the proposed charge and the actual charge can hardly be characterized as immaterial or inconsequential. In fact, the difference could not be more significant: the former is alleged to be constitutionally deficient, whereas the latter is concededly constitutionally proper. Thus, there is nothing in the trial court's statement that its actual

charge would reflect the proposed charge, "in essence, maybe not exactly," that even remotely supports the majority's hypothesis that counsel might have thought that the difference between the proposed charge and the actual charge—a difference that the trial court stated would be immaterial and inconsequential—nevertheless would be so material and so consequential as to render the actual charge constitutionally proper despite the constitutional deficiency of the proposed charge.

[9] The majority also asserts that its refusal to find an implied waiver by defense counsel in the present case "is consistent with the policies underlying the [*Kitchens*] implied waiver doctrine," first, because the defense gained no apparent strategic benefit by failing to object to the court's allegedly improper charge and, second, because "expanding the implied waiver doctrine to situations [like the present one] in which a trial court fail[s] to put the [defense] on notice of [the court's] actual proposed jury instructions would undermine [the] policy" articulated in *Kitchens* of "encourag[ing] [the courts' use of] procedures to facilitate [the] meaningful review of jury instructions." Neither of these arguments provides any support for the majority's conclusion; indeed, both beg the very question posed by this appeal. The majority's first point requires it to consider the merits of the defendant's claim of instructional impropriety, which, under *Kitchens*, is improper unless the court first has determined that the claim was not impliedly waived. See *State* v. *Kitchens*, supra, 299 Conn. 482–83. Furthermore, as the majority concedes, this court observed in *Kitchens* that "a defendant may implicitly waive objections to jury instructions even without 'obvious tactical reasons' . . . id., 481 . . . ." In other words, under *Kitchens*, it is irrelevant to the issue of waiver whether defense counsel's failure to object appears to have been predicated on strategic considerations, which, as I explain in part II of this opinion, is virtually never the case. The majority's second contention also is baseless because it presumes that defense counsel in the present case did not get a meaningful opportunity to review the trial court's jury charge on robbery in the first degree, which is precisely the issue that the majority must decide.

[10] Under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989), a defendant is entitled to prevail on an unpreserved constitutional claim if (1) the record is adequate for consideration of the claim, (2) the claim is of constitutional magnitude, (3) the defendant can establish the constitutional violation, and (4) the state is unable to demonstrate that the violation was harmless beyond a reasonable doubt. Of course, the first prong of this test is invariably satisfied in a case, like the present one, involving a claim of a constitutionally deficient jury instruction.

[11] As we explained in *Kitchens*, "[a] constitutional claim that has been waived does not satisfy the third prong of the *Golding* test because, in such circumstances, we simply cannot conclude that injustice [has been] done to either party . . . or that the alleged constitutional violation . . . exists and . . . deprived the defendant of a fair trial . . . ." (Internal quotation marks omitted.) *State* v. *Kitchens*, supra, 299 Conn. 467.

[12] Judge Sheldon, writing for the Appellate Court in *Holloway* v. *Commissioner of Correction*, 145 Conn. App. 353, 77 A.3d 777 (2013), recently underscored this very point: "One of the most important responsibilities of defense counsel in a criminal trial is to protect his client against conviction of any charged offense without proof beyond a reasonable doubt of each essential element of that offense. To ensure that the defendant receives such basic protection from an unconstitutional conviction, counsel is afforded not only the opportunity to submit requests to charge the jury on the essential elements of each charged offense, but to object to any of the state's requests to charge that misdescribe those elements or misstate the state's burden of proof with respect to them. Furthermore, even if counsel submits no requests to charge, he is afforded a final, fully effective opportunity to protect his client's right not to be convicted of any charged offense without proof beyond a reasonable doubt of each essential element of that offense by noting his exceptions to the trial court's charge, immediately after the charge is delivered to the jury. Regardless of counsel's particular trial strategy on behalf of his client, he simply has no excuse not to insist that the jury be properly instructed on each essential element of every charged offense by using one or more of the previously described procedural vehicles. Because there is no conceivable tactical justification for defense counsel not to preserve his client's right not to be convicted without proof beyond a reasonable doubt of each essential element of each charged offense by insisting that proper jury instructions be given on those elements, counsel's failure to take timely steps to ensure that such instructions are given on each

charge to protect his client from an unwarranted conviction on that charge constitutes deficient performance with respect to that charge . . . ." (Citation omitted.) Id., 366–67.

[13] Although the majority in *Kitchens* rejected my contention that such an express disavowal of waiver by defense counsel invariably would trump any possible finding of implied waiver, I confess that I do not comprehend the majority's stated reasons for doing so. See generally *State* v. *Kitchens*, supra, 299 Conn. 541–44 nn.9–10 (*Palmer, J.*, concurring). Indeed, it seems self-evident that an explicit, on-the-record statement by counsel in which he explains that his failure to object to the court's proposed charge should not be construed as a waiver of any claim that has not been raised necessarily will defeat any possible contrary inference with respect to counsel's intent. In any event, I urge defense counsel who wish to make it clear that they do *not* intend to waive any such claims to expressly so inform the trial court and then, if necessary, to test the efficacy of that disavowal on appeal. In urging this approach, I intend no disrespect to the members of this court who comprised the majority in *Kitchens*. Rather, I simply cannot fathom how this court rationally could disregard such a representation by counsel in favor of a broad and unyielding rule pursuant to which a knowing and intentional waiver is irrebuttably presumed merely because counsel failed to object to the charge following a reasonable opportunity to review it.

[14] Indeed, subsequent to this court's statement in *Kitchens* concerning plain error, this court has questioned whether plain error is subject to waiver under any circumstances. See *State* v. *Darryl W.*, supra, 303 Conn. 371–72 n.17; see also *State* v. *Webster*, supra, 308 Conn. 64 (*Rogers, C. J.*, concurring).

I also note that, in *State* v. *Santiago*, 305 Conn. 101, 49 A.3d 566 (2012), this court recently stated that it left "for another day the question of whether the [waiver] rule set forth in *Kitchens* is applicable [in death penalty] cases." Id., 197 n.88. It is inconceivable to me that counsel in a death penalty case reasonably could be presumed to waive a limitless number of constitutional challenges merely because he did not raise them in the trial court. And yet, under *Kitchens*, defense counsel's failure to raise that universe of potential objections after being afforded an adequate opportunity to review the proposed charge would constitute a knowing and intelligent waiver of all of those claims, such that the third prong of *Golding* would not be satisfied. See footnote 10 of this opinion. If we were correct in *Kitchens* that such conduct by counsel constitutes a knowing and intentional waiver in a noncapital case, including those involving class A felonies such as murder and kidnapping, why would that very same conduct not constitute a knowing and intentional waiver in a capital case? I can think of no principled reason to conclude that it would not. As absurd as it is to presume that defense attorneys routinely engage in a knowing and intentional waiver of all possible constitutional claims that they have not raised in noncapital cases—even if they were to state expressly that that is *not* their intent—it is even more absurd to presume that counsel in capital cases also do so.

[15] Because the defendant has not asked us to reconsider our holding in *Kitchens*, I discuss the case merely to explain why I agree with the majority that this court should reverse the judgment of the Appellate Court, even though that court properly applied *Kitchens*. I am hopeful, however, that, sooner rather than later, this court will recognize that *Kitchens* was wrongly decided and, when presented with the opportunity to do so, will overrule *Kitchens* and restore *Golding* review for all cases in which it was intended, including cases in which the record reflects nothing more than that defense counsel failed to object to the charge after being afforded a meaningful opportunity to review it.

[16] Under the circumstances, it is both odd and ironic that the majority takes me to task for declining to apply *Kitchens* faithfully to the present case and to urge affirmance of the judgment of the Appellate Court, when to do so would require me to vote to deprive the defendant of what I believe is his right, under *Golding*, to challenge on appeal the constitutionality of the court's jury charge on robbery in the first degree. See footnote 10 of the majority opinion (criticizing me for "[r]evisiting" *Kitchens* rule because we have not been asked to overrule *Kitchens* in present case). Apparently, the majority thinks that *I* should follow *Kitchens* to reach a result that, as I have explained in this opinion and to a greater degree in my concurrence in *Kitchens*, is absolutely wrong, even though, in order to avoid an injustice in the present case, the majority *itself* refuses to apply the rule in *Kitchens*. In other words, although the majority seeks to reach a fair and just result by *not* following the rule in *Kitchens*, it would have me reach an unfair and unjust result by *following* that rule. My response to the majority is simple:

stare decisis has its limits. Furthermore, when a court decides not to follow precedent—as the majority does in the present case—it is imperative to acknowledge that decision, and to explain it forthrightly, because the parties and the public have a right to such principled decision making. It simply is unacceptable for a court, like the majority in the present case, to *assert* that it is following precedent when, in fact, it is not.

I note, finally, that, in striving to avoid the harshness and unreasonableness of our holding in *Kitchens* for purposes of the present case, the majority makes the same mistake that the court made in *Kitchens*: in both *Kitchens* and in this case, the court identifies what it perceives to be the correct result, and it then achieves that end by use of reasoning that falls of its own weight. As a consequence, today, *Kitchens* spawns more bad law; in an effort to circumvent *Kitchens*, the majority necessarily relies on arguments that are logically indefensible. Despite the correctness of the result in the present case, the manner in which the majority achieves it is itself indefensible because, in the long run, the soundness of this court's reasoning is no less important than the results that it reaches.